# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### BALTIMORE & O. R. CO. v. UNITED STATES.

#### (Circuit Court of Appeals, Sixth Circuit. May 8, 1917.)

#### No. 2911.

1. MASTER AND SERVANT ⬥13—HOURS OF SERVICE—EXCUSES.

   In an action for penalties for keeping a freight train crew on duty more than 16 hours, where the weather was extremely cold, with deep snow and a bad storm, the jury might have found that delays caused by the breaking of a knuckle, the freezing of the air hose and a broken knuckle lock were due to unavoidable accidents or causes which could not have been foreseen, within the proviso of Hours of Service Act March 4, 1907, c. 2939, § 3, 34 Stat. 1416 (Comp. St. 1916, § 8679), that the provisions of such act shall not apply to delays so caused.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14.]

2. MASTER AND SERVANT ⬥13—HOURS OF SERVICE—EXCUSES.

   Under Hours of Service Act, § 3, providing that such act shall not apply to any case of unavoidable accident, nor where the delay was the result of a cause not known when the employé left the terminal and which could not have been foreseen, while the circumstances may make it imperative and lawful that a crew should continue at work until the train reaches a relay point, the carrier cannot arbitrarily add to the specified 16 hours the amount of any delay arising from the excepted causes, nor arbitrarily keep the crew on duty until the end of the run, or the nearest regular relay point.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14.]

3. MASTER AND SERVANT ⬥13—HOURS OF SERVICE—EXCUSES.

   Under the proviso of Hours of Service Act, § 3, the prescribed penalties do not accrue for such excess service as is the proximate result of the unavoidable accident, but the suspension of the statute exists only to the extent that the unavoidable accident was and continues to be the moving cause of the excess service.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14.]

4. APPEAL AND ERROR ⬥1064(4)—HARMLESS ERROR—INSTRUCTIONS.

   In an action for penalties for keeping a freight train crew on duty more than 16 hours, defended on the ground that delays were due to unavoidable accidents and causes which could not have been foreseen, where the issue was close, instructions which were not wholly clear, and might have been misunderstood by the jury, concerning the degree of diligence required to avoid keeping the men on duty longer than 16 hours and the effect of delays due to excusable causes, was prejudicial.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4224.]

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

242 F.—1

5. MASTER AND SERVANT ⊚⟹17—HOURS OF SERVICE—PENALTIES—QUESTION
FOR JURY.

A freight train crew went on duty at 11:30 a. m., and left Newark for a run of 87 miles to Chicago Junction, usually requiring about 8½ hours, at 12:45 p. m. The weather and other causes delayed the train, so that it did not leave L., 53 miles from Newark, until midnight. At A., the next station, there was a delay of 1½ hours, at N., 63 miles from Newark, which the train reached at 2:47, a delay of 50 minutes, and at S., 10 miles further, which it reached at 5:10, a delay of 2 hours, during which the crew was relieved by a crew sent out from Chicago Junction on the regular train, leaving at 5:20. The delays at A., N., and S. might have been found to be excusable. *Held*, that defendant's motion for an instructed verdict was properly denied, as the jury might have found that, in the exercise of a high degree of diligence, it was the carrier's duty to send relief by a special train, without waiting for the regular train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16.]

6. MASTER AND SERVANT ⊚⟹13—HOURS OF SERVICE—EXCUSES.

Under Hours of Service Act, § 3, where there is a delay from unavoidable accident, or a cause not known to the railroad's agents when a freight train leaves its terminal, and which could not have been foreseen, the railroad is entitled to add to the 16 hours permitted by statute all the delay, and only such delay as occurs as the result of this cause, provided it exercised reasonable diligence from the beginning of the trip to avoid delays, exercised a high degree of effort or extreme diligence to get the train through to the end of the run within the time limit, when it became or should have become apparent that there was danger of not getting through on time, used that same high diligence to prevent excess service by laying up the train, sending relief, or any other practicable way, as soon as excess service became fairly probable, and continually and until the service ended used the same high diligence and by the same means to make the excess service as short as possible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Action by the United States against the Baltimore & Ohio Railroad Company for penalties. Judgment for the government, and defendant brings error. Reversed, and new trial awarded.

S. H. Tolles and R. C. Hyatt, both of Cleveland, Ohio, for plaintiff in error.

Philip J. Doherty, of Washington, D. C., and E. S. Wertz, U. S. Atty., of Cleveland, Ohio, for the United States.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge. In the court below, the government alleged that the defendant, the railroad company, had violated the Hours of Service Act (34 Stat. p. 1415) by keeping on duty more than 16 hours, on December 25 and December 26, 1914, the crew of a freight train bound from Newark to Chicago Junction. The crew consisted of 2 engineers, 2 firemen, a conductor, and 2 brakemen. The defendant admitted that more than 16 hours service had been rendered by the employés, but claimed that the delays which caused the excessive service resulted from casualty, unavoidable accident, or the act of God.

⊚⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The issues were submitted to a jury, which found for the government. The railroad company alleges that there was error in the reception of evidence and in the instructions to the jury.

The case involves a construction and application of the proviso of section 3 of the act, which is:

"That the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God, nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employé at the time said employé left a terminal, and which could not have been foreseen."

This makes it necessary to state the facts somewhat fully. The distance from Newark to Chicago Junction was 87 miles. This train was scheduled to leave Newark at 10:35 a. m., and arrive at Chicago Junction at 7 p. m.—a regular running time of about 8½ hours. On this occasion, the crew went on duty at 11:30 a. m., but did not leave Newark until 12:45 p. m. The train was heavy, having 82 cars with 2 engines, there was a bad storm and it was very cold, the work at the stops was difficult and slow and other trains had to be waited for. The result is that this train did not leave Lexington, 53 miles from Newark, until midnight, after the men had been on duty 12½ hours, and about 11 hours after it left Newark. It cannot fairly be claimed that any delay which had occurred up to this time is within the proviso in question. At the next station, Alta, there was a delay of an hour and a half, caused by the breaking of a knuckle and in the necessary replacement and repairs. The train left Alta at 2 a. m., and reached the next station, North Siding, 63 miles from Newark, at 2:47. The crew had then been on duty 15¼ hours. Here there was a delay of 50 minutes, caused by the air hose freezing, and the necessary repairs. Leaving North Siding at 3:57, the train reached Shelby Junction, 10 miles further, at 5:10. Here there was a further delay of 2 hours on account of a broken knuckle lock, the breaking in two of the train and the necessary repairs and clearing the track; but at about 6 o'clock, after 18½ hours of service, the crew was relieved by a crew which had been sent back from Chicago Junction on the regular train leaving there at 5:20.

[1] Under the circumstances of this case, and considering the extent to which the extreme cold and deep snow and storm would aggravate occurrences otherwise less serious, we are inclined to think that the described delays at Alta, North Siding, and Shelby Junction might have been found by the jury to result from unavoidable accident or from a cause which could not have been foreseen by the agents in charge when the train left Newark. We think this conclusion not out of harmony with our holding in No. 2910 (a case of the same title, opinion filed herewith) that the disabling of the water pipe could not be such an accident. Not only is there in that case nothing tending to show that ordinary inspection and care would not have prevented the trouble, but in making concrete application of the term "unavoidable accident," there is a necessary distinction between a fixed water pipe in a tank and freight car apparatus subjected to severe strains of transportation under difficult conditions. We find, then, that the evidence tended to show that at the end of the 18 hours and 30 minutes of actual service, delays amounting to about 3 hours and 30 minutes had occur-

red, which were attributable to unavoidable accident—delays of the class which, for convenience, we hereafter call "excusable"—and that since, when the train left Lexington, it had 34 miles to go, and had less than 4 hours of the 16 remaining in which to make that distance, including several stops, it should then have been apparent to the train dispatcher that there was a serious danger, if not a probability, that the 16 hours would be exceeded before Chicago Junction could be reached. In this situation, defendant requested two instructions. One was that the defendant was entitled of right to add to the 16 hours the time of whatever delay was attributable to an unavoidable accident, and the other was that when the unavoidable accident happened causing delay beyond 16 hours, the defendant was entitled to keep the crew in service until the end of the run or the nearest regular relay point. The refusal of these instructions is alleged as error.

[2] We cannot think that defendant was entitled to either instruction. It is true that the Interstate Commerce Commission, soon after the enactment of the law, ruled that an employé so delayed might be continued on duty to the end of the run ("The proviso quoted removes the application of the law to that trip." I. C. C. Conference Ruling 88, June 25, 1908); but when read in connection with other administrative rulings (see discussion of same in San Pedro R. v. United States, 220 Fed. 737, 744, 136 C. C. A. 343, and in Atchison Ry. v. U. S., 220 Fed. 748, 136 .C. C. A. 354 [1]) we doubt whether it was intended to lay down any general and universal rule. At any rate, since such a construction of the act would not infrequently remove altogether the time prohibition and permit unlimited service to be exacted, it would be so in conflict with the general purpose and scope of the act so often declared that we cannot be satisfied to adopt it, although it is plain enough that the circumstances of a given case may make it imperative and lawful that the crew should continue at work until the train reaches a relay point.

Nor can we think that the statute carries any arbitrary and certain permission to add to the specified 16 hours the amount of any delay arising from the excepting causes. It is contrary to the spirit of the act to suppose that if there had been 3 hours excusable delay in the early part of the trip and there still remained ample time to finish the run within 16 hours, the railroad could arbitrarily or unnecessarily allow additional delays, so as to call for 19 hours' service. On the other hand, it seems equally clear that, through lost connections or impossibility of relief or the necessity of paying due regard to the public right to the operation of other trains, that very same delay might make necessary excessive service of more than 3 hours. To adapt the spirit of the statute to all these varying circumstances, some other rule must be found than the mere addition of a time equal to the period of excusable delay.

[3] The application of the proviso undoubtedly develops ambiguities, but the prevention of excessive service was the substantial thing at which the statute was aiming, and when the proviso says that in case

---

[1] Affirmed by Supreme Court, June 4, 1917. 244 U. S. 336, 37 Sup. Ct. 635, 61 L. Ed. ——.

of unavoidable accident "the provisions of this act shall not apply," we think it must mean that the penalties will not accrue for such excess service as is the proximate result of the unavoidable accident, and that the suspension of the statute exists only to the extent that the unavoidable accident was and continues to be the moving cause of the excess service. Since the duty of obeying the statute as far as possible must be always present, this construction requires that the railroad company should be diligent to prevent and to minimize excess service, and the questions will be what degree of diligence is required and when it begins.

Complaint is made that the trial court charged that the railroad must exercise a high degree of diligence to this end. We think this instruction was correct. No ordinary occurrence will suspend the operation of the statute, but it must be such as could not have been foreseen; and this very language surely imposes a high degree of diligence upon a railroad as a condition of permitting it to allege the occurrence of the suspending incident, even if the same inference did not come from the term "unavoidable." That being so, it is most appropriate that the same degree of diligence against the continuing effect of the cause of delay should be required as is demanded against its inception.

When does the railroad become charged with the duty to use this extreme diligence in avoiding or minimizing excess service? It cannot be merely when the unavoidable accident occurs, for there may still be remaining apparently ample time to recover from the accident and complete the trip, or it may already have become apparent that excess service cannot be avoided. The duty can hardly exist from the beginning. The schedule of this train called for only about half of the 16 hours, and since 16 hours' service is lawful, it is difficult to see how there is any duty to use extraordinary, high or extreme diligence to avoid excess service, so long as apparently ample time remains and there is no reason to apprehend the trip will not be finished within the time. Concretely, it does not seem that it could have been intended to impose a penalty as the ultimate result of a delay of (e. g.) 3 hours in waiting for a connection or for a shipment (a delay convenient, but not necessary) in the early part of the trip, when there still remained to finish it twice as much time as was apparently necessary and when the casualty happened in the latter part of the trip. While we do not question that railroads should keep the statute in view even from the beginning of the trip, and that the immunity of the proviso may not safely rest upon the arbitrary or reckless disregard of the schedule before the casualty happens, yet we see no warrant for requiring in this earlier period more than ordinary or reasonable diligence, such as would be dictated by due regard for all the duties of the railroad both as a carrier and as an employer. It must follow that the duty in question to use high diligence begins when the railroad becomes chargeable with notice that such diligence may be necessary to prevent or to minimize excess service. We have not the benefit of any former constructions of this act in this particular, but what we deem its general purposes and the applicable principles of construction lead to the conclusion we have stated. It must be observed that we are not now dealing with the prohibition of the statute and adopting a construction

which can rightly be thought to weaken that prohibition by an inquiry regarding diligence. We are considering a proviso or exemption which, taken literally, goes further than we think could have been intended, since, so taken, it would destroy the statute pro tanto; and we are inquiring only what diligence ought rightly to be exacted from the railroad as a condition of allowing it to invoke this proviso.

It follows, also, that the practical and efficient thing for the railroad to do after it must be deemed aware that the train will not get through within the time limit, and in cases which cannot be otherwise met, is to send relief. Just how and when it should be sent must depend on the particular situation; but we agree with the Circuit Court of Appeals of the Ninth Circuit that such a duty may arise so as to be a condition without the performance of which the railroad may not invoke the benefit of this proviso. San Pedro Co. v. United States, supra, 220 Fed. at page 737, 136 C. C. A. 343; Newport Co. v. United States (C. C. A. 6) 61 Fed. 488, 9 C. C. A. 579.

[4] The instructions to the jury were not wholly clear on these subjects. It was told that the railroad must exercise a high degree of diligence to avoid keeping the men on duty longer than 16 hours, and that otherwise its conduct was not excused. It was not told that diligence, after the 16-hour period had passed, was important, or could justify any part of the excessive service. Parts of the charge indicated that the necessary high diligence must have existed from the beginning of the run, other parts that its necessity only arose after the unavoidable accident or unforeseen event, and still other parts fixed the origin of the duty at the time which we think the right time. Again, it was instructed in effect that (e. g.) the 1½-hour delay at Alta could not add more than 1½ hours to the allowable time, and that the delay at Shelby Junction, which did not begin until after the 16 hours had passed, could not be credited, unless the railroad company, after the Shelby accident had happened, was diligent to keep within the 16-hour limit. Considering the whole charge, the record permits the inference that the jury may have believed that 3 hours' delay was from causes specified in the proviso and yet have found for plaintiff because defendant had not been highly diligent in the first part of the trip before any necessity appeared or because diligence after the 16-hour period was immaterial. We must regard the charge in this respect as erroneous; and, owing to the closeness of the issue, as below pointed out, we think it prejudicial.

[5] At the conclusion of the trial defendant moved for an instructed verdict, and error is assigned upon the denial of this motion. In this action there was no error. In order to justify granting the motion, it must have conclusively appeared, not only that the causes of delay were among those specified in the proviso (and this was for the jury), but that after it became aware, or should have been aware, that there was a substantial probability of not completing the run within 16 hours, the defendant exercised a high degree of diligence, first, to avoid any excessive service, and, second, if that could not be done, to make it as small as possible. Whether such diligence was exercised can be intelligently considered in a concrete case only by determining what was omitted which might have been done. In this case, the railroad certain-

ly should have been aware of the impending necessity when the train reached North Siding. There remained less than one hour in which to make 25 miles. The necessity had become fairly clear at Alta (not a telegraph station), and we think, as before stated, it would have been within the rightful scope of the jury's judgment to find that the necessity should have been apparent on leaving Lexington at midnight.

Only three things are suggested which might have been done. The first is for the dispatcher to have instructed that as much of the train as was necessary be sidetracked and abandoned and that the two engines with the crew and part of the train hasten on to Chicago Junction. The second is that at some time before 3:30, when the 16 hours expired (and this practically means at North Siding), the train could have been laid up and the men laid off. Whether the appplicable measure of diligence allowed the jury to find the existence of a duty in either of these respects was not specifically submitted, and we need not now stop to consider. If not, we come to the third and remaining suggested duty, viz. to send a relief crew to meet this train. It is fairly inferable that this relief must come from Chicago Junction, that a regular train upon which it could be sent left at 5:20 a. m., which could meet and relieve this crew at Shelby Junction, and that between midnight and 5:20 there was no way to send relief, except by special train. The practical question, and the determinative one on this branch of the case, therefore, was whether there was such a breach of duty in not sending this relief earlier. Certainly, after midnight, in a winter storm and at a mere junction point, it is not to be assumed that a relief crew can be assembled and started at once, and, when due allowance is made for the inevitable delay, the existence of any duty to save a short time by sending a special instead of waiting for the regular is by no means clear. We are not prepared to say that a finding by the jury that such duty did exist would be without support. On the contrary, even upon the present record, the jury might have been of the opinion that there was such a duty and that it was not observed; but, under such circumstances, it is important that the nature and extent of the legal duty should be most carefully explained to the jury, and any confusion or conflict in the instructions is much more difficult to regard as clearly nonprejudicial, than in a case where the violation of the law is reasonably clear.

While we apply here the same rule of legal duty to send relief which we applied in No. 2910, yet the facts are sufficiently different so that we may well say there was an apparent and a clear breach of that duty in No. 2910, while in this case the proof of breach does not put it so beyond doubt that we may take it as an established fact. In that case only one man was needed, there were three employés available for relief, and it would have been necessary to send an engine 5 miles at the end of the afternoon. In the present case, six men were necessary to make a relief crew, it does not appear that any were available before they were sent, the distance was 24 miles, and the time was after midnight. More than that, at least upon the subject of sending relief, this case involved only the alternative between sending a special train or waiting for the regular, possibly for only a short time after the

special could have been sent, while in No. 2910 there was no such alternative.

[6] To summarize what has been said, and for the aid of the court below upon another trial, we construe the proviso in this way: If it is found that there was delay from an unavoidable accident, or from a cause not known to the railroad agents when the train left Newark, and which could not have been foreseen, then the railroad was entitled to add to the 16 hours all the delay, no more and no less, which thereafter occurred as the result of this cause; but it was entitled to do so only if the jury found the existence of all these conditions: (a) That from the beginning of the trip, and even before it became apparent, or should have become apparent, to the train dispatcher that there was danger of not finishing the trip within the time, the railroad used reasonable diligence to avoid delays; (b) that as soon as it became apparent, or should have become apparent, that there was any danger of not getting through on time, the railroad used a very high degree of effort or extreme diligence to get the train through to the end of the run within the time limit; (c) that as soon as it became fairly probable that excess service would otherwise be necessary, the railroad used that same high diligence to prevent excess service, either by laying up the train or by sending relief or in any other practicable way; (d) that continually and until the service ended, the railroad used the same high diligence and by the same means, to the end that the excess service, if any, should be as short as possible.

It must be understood that what we have said regarding the diligence required, after the trip begins, in order to get and to keep the right to excessive service, has been said with reference to a case where "the delay was the result of a cause * * * which could not have been foreseen" when the train left the terminal. Only upon the hypothesis that the jury finds the existence of this preliminary extreme care does the exempting clause of the proviso require construction.

Since there must be a new trial, and the questions of evidence probably will not arise again in the same shape, we do not think it necessary to pass upon them. The two telegrams and the circular were received as bearing on the company's diligence; but, since the practical question was whether the relief was sent early enough, these matters were at most somewhat remote. So, too, the record, as it is brought here, leaves us in doubt whether certain adverse comments upon some of the evidence were wholly justified; but these matters alone would not, in any event, justify reversal.

The judgment is reversed, and a new trial awarded.