EVANSVILLE CONTAINER CORPORATION et al. v. McDONALD.

No. 9188.

Circuit Court of Appeals, Sixth Circuit.

Dec. 4, 1942.

---

Lindsey M. Davis, of Nashville, Tenn. (Reber Boult and William Hume, all of Nashville, Tenn., on the brief), for appellants.

Hardin H. Conn, of Springfield, Tenn., for appellee.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant has challenged the validity of a $25,000.00 judgment entered upon the verdict of a jury in an action by appellee to recover damages because of the death of her deceased husband. A remittitur of $5,000.00 was awarded by the court and accepted. Appellants assign two errors: the overruling of their motion for a directed verdict and the charge of the court on the rule of the last clear chance.

Assuming as established all of the facts that the evidence supporting appellee's claim reasonably tends to establish and drawing in her favor all inferences fairly deducible from such facts, the following appears:

In the early morning of March 28, 1940, Lynn McDonald, appellee's deceased husband, thirty-six years of age, was operating a light Dodge laundry truck on Tennessee Federal Highway 41-W and traveling north toward Clarksville, Tennessee. On the same highway and at the same time, appellant, J. T. Buchanan, was operating a Diamond T. truck weighing 18,000 pounds, belonging to appellant, Evansville Container Corporation, and traveling south towards Nashville. The vehicles collided on a two degree curve resulting in the death of McDonald and the injury of Buchanan. The highway at the point of collision had a concrete driving surface of twenty feet with a center black line division. Buchanan and the driver of a Ford truck following him were the only eye witnesses to the accident.

Buchanan stated in substance that the gross weight of his truck was 18,000 pounds, that there was a governor on it limiting the speed to forty miles an hour and that about 6:30 on the morning of the accident as he was driving on his regular run from Evansville, Indiana, to Nashville, Tennessee, his truck was in low transmission traveling about thirty miles an hour, pulling a grade and while on his right side of the road when he had just come out of a slight curve and was on a short straightaway before coming to another curve, he saw approaching him a white truck straddling the center line of the road and traveling at a terrific rate of speed, which he judged to be seventy-five miles an hour. He said he thought the driver would swing back to his own side of the road but as he got closer he was still across the line and Buchanan blew his horn and applied his brakes as best he could. He said the driver of the laundry truck seemed to be asleep and that when he blew his horn, the driver of the laundry truck swerved to his right side of the road and just as he got even with Buchanan's truck he caught the left hand corner of Buchanan's cab and the impact took off the door of Buchanan's truck and knocked his floor board out, broke his brake pedal which dropped down on the running board and slightly stunned him. Buchanan said when he came to he was going off the highway on his left side of the road. He said his left arm and left leg were injured.

J. M. Batey testified in substance that he was driving a Ford truck about four hundred yards behind appellant's truck at the time of the collision, and that appellant's truck was about fifteen inches to its right of the center line of the road and traveling at less than forty miles an hour, that he saw but could not tell, where the laundry truck was with reference to the center line because Buchanan's truck obscured his view, but that immediately after

the collision, which he saw, he pulled his truck off the concrete driveway to the side of the road and walked to the point of collision and that the tire marks on the road showed that the laundry truck had pulled to its left just enough to tie into the front wheel or the front fender of the big truck.

Some of the witnesses, who inspected the highway immediately after the collision at the point where they believed it occurred, testified that all the dirt and debris from the cars were on the left side of the road facing the direction in which appellant's truck was traveling and that the traction marks of the respective vehicles were plainly visible on the concrete surface of the road and that the marks made by appellant's truck were visible on its right side of the road for several feet and that they then veered in a curving line across the center of the road to the left and then abruptly off the road into an adjoining field. These witnesses also testified that the tracks of the truck in which decedent was traveling were on its right side to the center line of the road to a point where they were scuffed across the road to its right and on to its side of the berm of the road.

Appellant's truck had the left cab door knocked off and the left front wheel and axle knocked back about eight inches and the brake rod broken. The McDonald truck immediately over the steering wheel was smashed in and the door and fender on the left side were completely wrecked.

W. L. Evans, a witness for the appellee, testified that he arrived at the scene of the accident while Buchanan was limping up out of the field from his truck and he inquired of Buchanan what speed he was making at the time of the collision and he replied he couldn't have been making over forty miles an hour, but that he was making all he could. This witness also testified he heard Buchanan tell J. W. Keith, Sheriff of the County, when he asked him why he did not pull over further to the right that he didn't think there was any use, that he didn't have time as the truck was heading right into him.

■ The undisputed evidence shows that this accident happened in daylight on a road of ample width to allow two cars to pass each other without the least danger of interference. It was a repetitious example of negligent conduct in the operation of cars over our public highways. The law of the road was established long before our highways were used for automobile traffic and is exemplified in the statutory law of Tennessee which makes it the duty of travelers on the highway to drive to the right of the center of the street or highway except on one-way streets. Williams' Tennessee Code Annotated, §§ 2681 and 2682. The concept of this statute is that travelers shall turn to the right sufficiently that neither shall be retarded in his progress by reason of the other occupying his half of the way which the law has assigned to him for his use. This is a regulation to avoid collisions and if one neglects it and an accident follows an explanation of the occurrence begins with a presumption against him.

■ There is no unqualified and absolute right to drive to the center line of the highway when travelers meet, and even on his own right side a driver is required to drive reasonably. As to meeting cars, the center line of the road is "no man's land" and belongs to neither driver. Each must use his portion of the road with reasonable regard to others on the highway.

■ The issue in the case at bar is not only whether Buchanan was driving on his side of the road, but also assuming that he was, whether at the time of the collision he was driving with proper care under the facts and circumstances of this case. Williams' Tenn.Code Annotated, § 2681; Brown v. Brown, 16 Tenn.App. 230, 64 S.W.2d 59.

The operator of a large truck may not under all circumstances avoid the charge of negligence by showing that he hewed exactly to the line in the center of the road upon the presumption that an approaching vehicle would be driven at a legal rate of speed and would not adhere to the exact line in the center of the road. If drivers operating cars at full speed in opposite directions adhered to the center of the road, collisions would occur inevitably in passing. There is substantial evidence in the record that the tread tracks of the Diamond T. truck appeared on the roadway near the point of collision on the left side of the center line and other evidence in the record showed the tracks were either very close to the center of the line or a few inches right of it. It is true the evidence for appellants showed that the tread tracks of the truck in which appellee's deceased was driving were over the center to his left and that the deceased was driving at a reckless rate of speed but this evidence

does not relieve appellants of liability if appellant Buchanan's negligence, if any, was the proximate cause of the injury.

We cannot concern ourselves with the truthfulness of the witnesses for the respective parties or the weight of their evidence. The jury had the right to take into consideration the speed, the size and the weight of appellant's truck. Drivers of these vehicles know their length and width and owe other travelers on the highway the duty to take these elements into consideration when driving. In general evidence of tire tracks and skid marks and the condition of automobiles subsequent to an accident may be admitted as a means of ascertaining responsibility for the accident and such evidence may be weighed by a jury equally with the testimony of eye witnesses and if such facts or the surrounding circumstances have a tendency to contradict the testimony of eye witnesses, a jury may accept the evidence of the physical facts as of superior probative value. Walters v. Staton, 21 Tenn. App. 401, 11 S.W.2d 381. As we view the evidence, the question of the negligence of appellant Buchanan and the contributory negligence of appellee's deceased were left properly to the jury.

At the end of the trial and before the court instructed the jury, appellee requested the court in writing to charge specifically on the doctrine of the last clear chance. Appellants filed written objections to the request on the ground that there was no evidence to support it and further that the form in which the request was framed did not state sufficiently the legal duties of the deceased. The court in its charge gave verbatim the request of appellee but followed it with the further charge:

"* * * before the plaintiff could recover under the last clear chance doctrine the evidence must show that the peril of the plaintiff was discovered by the defendant and after defendant's discovery defendant failed to exercise reasonable care to prevent injury to the plaintiff; and if a person is put in a position of sudden peril, that is, if something happens right now that is unexpected and you are placed in that position by reason of no negligence on your part, when you have committed no act of negligence, and then under the facts and circumstances and in an emergency you do the wrong thing, when if you had done something else there would not have been a similar result, as a matter of law you

should not be chargeable with doing the wrong thing under the facts and circumstances. But if you are in that position, if you do the wrong thing and your own negligence has brought about the position that you are in, then the law gives you no advantage of the situation, and if you are wrong you would be charged with it as a matter of law."

Appellants made no further objection and took no exception to the charge as given by the court. After the acceptance of the verdict of the jury, appellants filed motion and grounds for a new trial and therein charged error in the failure of the court to sustain their objections to appellee's special request. Under this state of the record, appellee urges that the point raised by appellants is unavailing.

Rule 46, Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, eliminates the formality from the former practice, namely, the exception and provides that it is sufficient if the party makes known to the court the action he desires the court to take or his objection to the action taken and his ground therefor, at the time the ruling or order of the court is made or sought.

Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, authorizes the trial court to receive and rule on written requests for charges to the jury at any time during the trial or as the court reasonably directs and the rule further provides that "the court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury" and according to the terms of the rule "no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

This rule eliminated the former practice of requiring objections to be made in the hearing of the jury. Applying these rules to the case at bar in the light of their purpose, namely to call the trial court's attention specifically to the parties' requests or objections that they may be considered before the jury is charged, we are of the opinion that the objections of the appellants were sufficient to support their point that there is no substantial evidence in the record to justify a charge under the last clear chance doctrine. Appellants insist that appellee's declaration was insuffi-

cient to support the charge of the court on this doctrine. The negligence of appellants was relied on as the proximate cause of the death of appellee's deceased. Under these circumstances, the pleadings supported the charge. Swift & Company v. Young, 4 Cir., 107 F.2d 170; Sierocinski v. E. I. Du Pont De Nemours & Co., 3 Cir., 103 F.2d 843.

■ Under the decisions of the Supreme Court of Tennessee the last clear chance doctrine is applicable and recovery may be had notwithstanding the antecedent negligence of the injured person in getting into a perilous situation when the circumstances are such that the defendant by the exercise of reasonable care could have realized the danger and when he discovered, or by the exercise of ordinary care, could have discovered the perilous situation in time that by the use of the instrumentalities then in his control and under the conditions then existing he could have avoided the accident but failed to do so. Tennessee Central Ry. Co. v. Ledbetter, 159 Tenn. 404, 19 S.W.2d 258. Applying this rule to the case at bar, as we view it there was no substantial evidence in the record to support the court's charge on the last clear chance doctrine. There was no duty on the part of the driver of appellants' truck to act until the position of appellee's deceased appeared to be perilous. Todd v. Cincinnati, N. O. & T. P. R. Co., 135 Tenn. 92, 185 S.W. 62, L.R.A.1916E, 555.

■ The last clear chance rule is a phase of the question of proximate cause. It does not cover the whole field of this difficult question. It applies only to a status of danger originating in the injured party's negligence and relieves that negligence of its contributory character under certain conditions.

■ The question of the injured person's physical ability to escape is a part of the problem. Where the injured party was physically able to escape from the predicament in which he had placed himself by his own negligence, the doctrine has no application. Memphis St. R. Co. v. Roe, 118 Tenn. 601, 102 S.W. 343.

According to the theory of appellee, her deceased at no time placed himself in a perilous situation. In the light of the physical facts on which she relies so strongly, appellee's deceased was on his side of the road and the only evidence on which appellee relies for the application of the last clear chance doctrine is the statement of Buchanan that the truck of appellee's deceased was straddling the center line when Buchanan first saw it and that McDonald was coming very fast, but that Buchanan thought McDonald would get back on his own side of the road until the cars were very close to each other, when Buchanan blew his horn and put his brakes on as best he could, whereupon appellee's deceased whom Buchanan thought might be asleep, swerved his car without applying his brakes and caught the left-hand corner of the cab of Buchanan's truck.

■ Viewing the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to appellee on the issue of the last clear chance, such evidence shows that both parties were concurrently negligent up to the time of the accident and therefore the last clear chance rule has no application to the case. Grigsby & Co. v. Bratton, 128 Tenn. 597, 163 S. W. 804; Alquist v. Memphis St. R. Co., 6 Cir., 287 F. 351; Dickson v. Chattanooga Ry. & Light Co., 6 Cir., 237 F. 352, L.R.A. 1917C, 464; Tennessee Cent. Ry. Co. v. Ledbetter, supra.

■ Considering the whole charge of the court on the last clear chance doctrine, we cannot say that the error was trivial. There is a presumption that it was prejudicial. Fillippon v. Albion Vein Slate Company, 250 U.S. 76, 82, 39 S.Ct. 435, 63 L. Ed. 853; Baltimore & O. R. Co. v. United States, 6 Cir., 242 F. 1; Blodgett v. Pinkerton Tobacco Co., 6 Cir., 79 F.2d 945.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

MARTIN, Circuit Judge (dissenting).

In my view, the charge of the district court was not in any material respect erroneous or misleading, the verdict of the jury was supported by substantial evidence, and the judgment of the district court thereon should accordingly be affirmed.