TENNESSEE CENTRAL RAILWAY *v.* JULIA LEDBETTER, ADMINISTRATRIX.

(*Nashville.* December Term, 1928.)

Opinion filed July 19, 1929.

Walter Stokes and Holladay & Holladay, for plaintiff in error.

Worth Bryant and G. C. Whittaker, for defendant in error.

Mr. Justice McKinney delivered the opinion of the Court.

Between 10 and 11 o'clock on Sunday, July 3, 1927, Alonzo Ledbetter was instantly killed when his automobile collided with a switch engine of the Railway Company in the town of Monterey, which is a division point on said railway. The administratrix of the de-

ceased instituted this suit to recover damages for his alleged wrongful death.

The case was tried upon a single count, based upon common-law negligence, and the jury returned a verdict in favor of the administratrix for $5,000. Upon appeal the Court of Appeals reversed the trial court and dismissed the suit, holding that the trial court should have sustained the Railway Company's motion for a directed verdict.

The deceased had been employed in the shops of the Railway Company at Monterey, as a machinist, for ten years. All of the physical conditions existing at the place of the accident were well-known to both the deceased and the employees of the Railway Company. Chestnut Street, one of the leading thoroughfares of said town, is 60 feet in width and runs north and south and crosses the railroad at its switch yard. The railroad runs east and west, and at the point of the accident it maintains a main track and three switch tracks on each side thereof. That morning the crew were engaged in the usual switching operations.

Ledbetter approached said tracks from the south going north. He did not attempt to stop his car nor to look and listen before going on said tracks. When he reached the main track his car was struck by the switch engine, which was traveling west, and was shoved some 60 feet down the track but was never overturned. When Ledbetter approached the crossing there were two engines standing about 75 feet east of Chestnut Street on one of the switch tracks south of the main track. The engineer on the engine which killed deceased had blown his whistle for the crossing and the bell was ringing. The engine was running from 10 to 15 miles per hour, and

both the engineer and fireman were on the lookout ahead. The engineer, however, was on the opposite side from deceased and could not see the automobile. While the automobile of deceased had a left-hand drive, it appears that he was attempting to get out of same over the door on the right-hand side, and had reached the running board when the engine struck the automobile, causing him to fall under the engine.

Erbie Teeple, a nephew of deceased, testified that he was a brakeman in the employ of the Railway Company and was standing on the front footboard of the engine, looking ahead for obstructions; that he could not see the automobile of deceased, on account of the two engines standing on the switch, until it was within 10 to 15 feet of the main track; that the automobile slowed up and he jumped off "to keep from being in the tangle;" and gave the engineer a signal to stop, which was observed, but that when he jumped off the engine was right at the crossing.

J. R. Ward testified that he was the fireman and witnessed the accident. He was seated in the cab of the engine on the left-hand side and saw the automobile when within 30 or 40 feet of the main track. "Hard to say how close we were to the crossing, I would judge may be 100 feet." Witness hallooed to engineer "lookout for car;" when within about 50 feet of the crossing he saw that the automobile was coming on the track and hallooed to the engineer "that will do," which means to stop the engine; that the brakes were applied and the automobile was struck; that the engine was pretty close to the crossing when he saw deceased trying to get out of the automobile and that the automobile was about stopped when the engine struck it; and that there would have been little

difference had the emergency brake been applied instead of the air brake.

The engineer, Bill Lusk, testified that he was seated on the right-hand side of the engine and on the opposite side of the approaching automobile, which he could not see; that at the rate he was traveling he could stop the engine in about 100 feet; that when within about 50 feet of the crossing the fireman said "lookout for car," but that he understood him to say "lookout for cow," and shut off his steam so that he could stop the engine when signaled to do so; that he was within 6 feet of the crossing when the fireman said "that will do," and that about the same time Teeple jumped off on his side and signaled him to stop; that he put the brake on but at that time he was on deceased.

All of these witnesses, the first two having been introduced by the administratrix, testified that the accident was unavoidable.

■ The deceased was guilty of gross negligence in going upon said tracks without bringing his car to a stop and looking and listening. *Tennessee Cent. Ry. Co.* v. *Page,* 153 Tenn., 84.

■ Conceding that the fireman was guilty of negligence in not signaling the engineer to stop when he first discovered the automobile approaching the main track, it is apparent that the negligence of deceased continued to operate concurrently to the moment of the accident, in which event no recovery can be had. *Grigsby* v. *Bratton,* 128 Tenn., 597; *Todd* v. *Railroad,* 135 Tenn., 104; *Johnson* v. *Warwick,* 148 Tenn., 205.

■ Counsel for the administratrix, however, invokes the doctrine of "discovered peril," and insists that, notwithstanding the negligence of deceased, the Railway

Company, having discovered his dangerous situation, is liable because it did not immediately stop the engine.

This rule has been approved by this and many other courts.

In *Todd* v. *Railroad, supra,* the court said:

"If during a period at or before the infliction of injury adequate for preventive action by defendant he had actual knowledge of plaintiff's danger and failed to exercise ordinary care to avoid it, all authority is to the effect that plaintiff may be awarded relief; for then the negligence of defendant takes the color of willfulness."

In that case it was further held that the railroad would not only be liable where it actually discovered the peril of the deceased, but also where it would have discovered same by the exercise of ordinary care; that this latter rule only applies where the defendant is engaged in a business hazardous to the public in certain aspects, such as that of operating dangerous instrumentalities; for example, a railroad train; but that to this rule an exception is recognized to the effect that where the deceased was grossly negligent the law will refuse to impose on the defendant in his behalf any other than the doctrine of actually discovered peril. It was further held that the rule of "discovered peril" did not apply where the position of danger is not discovered by the defendant in time to avoid the injury.

The rule of "discovered peril" is discussed at length in *Railroad* v. *Roe,* 118 Tenn., beginning at the bottom of page 611. In that opinion the court quoted approvingly from *Cleveland, etc., R. R. Co.* v. *Miller,* 149 Ind., 490, as follows: "Negligence arises from inattention, thoughtlessness, while willfulness cannot exist

without purpose or design; . . . and when willful-ness, is the essential in the act or conduct charged to the party with a wrong, the case ceases to be one of negli-gence. Willfulness and negligence are the opposite of each other; the former signifying the presence of inten-tion, and the latter its absence." Also from the opinion of the same court in *Louisville, N. H. & Chicago R. R. Co.* v. *Bryan,* 107 Ind., 51, in which it was said: "To constitute a willful injury, the act which produced it must have been intentional, or must have been done un-der such circumstances as evinced a reckless disregard for the safety of others and a willingness to inflict the injury complained of. It involves conduct which is *quasi*-criminal."

When these tests are applied to the facts of this case, we quite agree with the Court of Appeals that there is an absence of willfulness or recklessness on the part of the servants of the Railway Company that would war-rant the court in fixing liability on it.

In the first place, it does not appear that the engine could have been stopped had the fireman given the signal when he first saw deceased.

In the next place, when the fireman first saw deceased he was from 30 to 40 feet from the main track, driving slowly and looking directly at him. The fireman took the precaution to warn the engineer that a car was ap-proaching, but he no doubt thought that, in the circum-stances, deceased would stop the car before reaching the track. He certainly had every reason to believe that he would.

It is a very common occurrence for persons to drive cars near to the track and stop. The evidence shows that there was nothing to have prevented deceased from

stopping his car. His failure to do so is accounted for upon the theory that he became alarmed and excited and lost his head. ·

When the fireman discovered that the car was coming on and the situation appeared to him to be perilous, he signaled the engineer to stop, but it was too late to avoid the collision.

We have been cited to no authority that requires an engineer to stop his train as soon as he sees a person traveling in the direction of the track, especially where he is looking at the engine, as the deceased was doing in this instance. He has a right to assume that such a person will exercise ordinary care for his own safety. The rule would be otherwise where the traveler had entered upon the track, or so near thereto as to come in contact with the train, or where it was apparent that one in an automobile was so near the track and traveling at such a rate of speed that he would be unable to stop before reaching the track.

It is only when the situation appears to be perilous that the defendant must act. Evidently the fireman did not consider the deceased in danger when he first saw him.

The engineer testified that had he understood the fireman to say "car" instead of "cow" he would have applied his brakes, notwithstanding that was not a signal to stop. There was nothing in the conduct of the engineer to even suggest willfulness or recklessness.

While this was an exceedingly unfortunate accident it was due primarily to the gross negligence of deceased. The most that can be charged against the Railway Company is its failure to stop its engine when it discovered . deceased 30 or 40 feet from the track driving his auto-

mobile in its direction, and at a rate of speed at which it could have been easily stopped before reaching the track.

In these circumstances the rule has no application, and the writ will be denied.