GEORGE F. BAGGETT, Plaintiff in Error, v. LOUIS-
VILLE & NASHVILLE RAILROAD CO., Inc., Defend-
ant in Error.

RUTH BAGGETT, Plaintiff in Error, v. LOUISVILLE
& NASHVILLE RAILROAD CO., Inc., Defendant in
Error.—365 S.W. (2d) 902.

Western Section. August 30, 1962.

Certiorari Denied by Supreme Court February 7, 1963.

Petition to Rehear on Certiorari Denied by Supreme Court
April 3, 1963.

Matherne & Matherne, Brownsville, for plaintiffs in error.

A. H. Gray, Brownsville, Hooker, Keeble, Dodson & Harris, Nashville, of counsel, for defendant in error.

BEJACH, J. These consolidated causes involve appeals in error by George F. Baggett and Ruth Baggett, his wife, who were plaintiffs in the lower court, from judgments of dismissal granted on motion for new trial. The parties will be styled, as in the lower court, plaintiffs and defendant, or called by their respective names.

Plaintiff, George F. Baggett, had recovered a jury verdict for $7,871.69 for personal injuries and medical expenses, and an additional $275.00 for property damages; and plaintiff, Ruth Baggett, had recovered a verdict for $2,000 for personal injuries; but on motion for new trial made by defendant, the trial judge granted that motion, set aside these verdicts, and granted defendant's motion for a directed verdict as made at the conclusion of all the proof. A motion for directed verdict was made at the conclusion of all the proof. A motion for directed verdict had been made by defendant at the end of plaintiff's proof, which was at that time overruled, as was the same motion made by defendant at the end of all the proof. After the sustaining of defendant's motion for directed verdict, when its motion for new trial was granted, plaintiffs moved for a new trial, which motion was overruled. Plaintiffs then filed, as ordered by the court, one bill of exceptions for the two cases and perfected their appeals in the nature of writs of error to this court. Here the plaintiffs' as plaintiffs in error, have filed two assignments of error. These assignments of error present the single question of whether or not the trial judge erred in granting defendant's motion for a directed verdict.

These consolidated causes grew out of a grade crossing collision on December 11, 1960 in the city of Brownsville, Tennessee. Plaintiffs were traveling south on Washington Street in that city in a 1950 model pick-up truck when they were struck at approximately 10:00 o'clock A.M. by defendant's east bound passenger train out of Memphis which was running about 55 minutes late.

Plaintiffs' declarations are each in several counts. The first count of Mrs. Baggett's declaration alleges common law negligence on the part of the defendant; the second count alleges violation of the Statutory Precautions Act, sections 65-1208 and 65-1209, T.C.A.; and the third count alleges violation of a Brownsville city ordinance which limits the speed of trains within the corporate limits of that city to 30 miles per hour. Mr. Baggett's declaration duplicates the three counts of Mrs. Baggett's declaration and adds six other counts, making nine in all. The six additional counts of Mr. Baggett's declaration claim damages for property loss and for medical expenses and loss of Mrs. Baggett's services.

■ In our opinion, these declarations may be treated as if alleging merely common law rights of action. By enactment of Chapter 130, Public Acts of 1959, the General Assembly of Tennessee has, in our opinion, converted causes of action for violation of the Statutory Precautions Act into mere common law rights of action. Prior to the enactment of that statute, causes of action arising out of violation of the Statutory Precautions Act were separate and distinct from common law causes of action based on the same facts, and had to be stated in separate counts of the plaintiff's declaration. Middle Tenn. R. Co. v. McMillan, 134 Tenn. 490, 184 S.W. 20. Before enactment of the 1959 statute, violation of the Statutory Precautions Act created a right of action for injuries sustained whether or not violation of the Statutory Precautions Act was the proximate cause. Illinois Cent. R. Co. v. Davis, 104 Tenn. 442, 58 S.W. 296; Graves v. Illinois Cent. R. Co., 126 Tenn. 148, 148 S.W. 239; Little v. Nashville, Chattanooga & St. Louis Ry. Co., 39 Tenn. App. 130, 142, 281 S.W.(2d) 284. Under the Statutory

Precautions Act prior to the 1959 amendment, it constituted no defense to prove that the accident and injury would have occurred, even if the precautions required had been observed. Chattanooga Rapid Transit Co. v. Walton, 105 Tenn. 415, 58 S.W. 737; Southern R. Co. v. Brooks, 125 Tenn. 260, 143 S.W. 62; Graves v. Illinois Cent. R. Co., 126 Tenn. 148, 148 S.W. 239; Tennessee Cent. R. Co. v. Morgan, 132 Tenn. 1, 175 S.W. 1148; and Little v. Nashville Chattanooga & St. Louis Ry. Co., 39 Tenn.App. 130, 143, 281 S.W.(2d) 284. And even contributory negligence on the part of the injured person was not a complete defense, though it might go in mitigation of damages. Louisville & N. R. Co. v. Truett, 6 Cir., 111 F. 876; Rogers v. Cincinnati N. O., etc. R. Co., 6 Cir., 136 F. 573; Southern R. Co. v. Koger, 6 Cir., 219 F. 702; Southern Ry. Co. v. Brubeck, 6 Tenn.App. 493; and Little v. Nashville, Chattanooga & St. Louis R. Co., 39 Tenn. App. 130, 143, 281 S.W.(2d) 284. Chapter 130, Public Acts of 1959, provides, however, that violation of 65-1208, T.C.A. shall constitute merely negligence per se, with the burden of proof placed on the plaintiff. It repeals section 65-1210, T.C.A. which formerly placed the burden of proof on the Railway company. Even prior to Chapter 130, Public Acts of 1959, the counts which alleged violation of the city ordinance, might properly have been included in the common law counts. Little v. Nashville, Chattanooga & St. Louis Ry. Co., 39 Tenn.App. 130, 281 S.W.(2d) 284. Since the enactment of the 1959 statute, it will no longer be necessary, in our opinion, to have a separate count in a declaration charging violation of sections 65-1208 and 65-1209, T.C.A. Counsel for plaintiffs contend that the changes made by the 1959 Act are merely procedural in character. We cannot agree with

that contention. In our opinion, the changes made are substantive in character and reduce causes of action arising out of violation of the Statutory Precautions Act to mere common law rights of action.

■ Since the question to be decided by this court is whether or not the trial court erred in granting defendants' motion for directed verdict, we must consider the evidence most strongly in favor of the plaintiff, taking as true that which tends to support their rights, discarding all countervailing evidence, and from the rest, allow all reasonable inferences in favor of plaintiffs. Spivey v. St. Thomas Hospital, 31 Tenn.App. 12, 211 S.W.(2d) 450; D. M. Rose & Co. v. Schneider, 185 Tenn. 499, 206 S.W. (2d) 897; City of Winchester v. Finchum, 201 Tenn. 604, 301 S.W.(2d) 341; Board of Mayor and Aldermen of Covington v. Moore, 33 Tenn.App. 561, 232 S.W.(2d) 410; Cherry v. Sampson, 34 Tenn.App. 29, 232 S.W.(2d) 610; Nashville, Chattanooga & St. Louis Ry. v. Crawford, 39 Tenn.App. 37, 281 S.W.(2d) 69; Callahan v. Town of Middleton, 41 Tenn.App. 21, 292 S.W.(2d) 501; Benson v. Fowler, 43 Tenn.App. 147, 306 S.W.(2d) 49.

In the light of the above cited authorities, we will refer only to proof favorable to plaintiffs' contentions or proof which presented issues to be determined by the jury, whether such proof was offered by the plaintiffs or by the defendant. Plaintiffs introduced seven witnesses and the defendant fifteen. Some of the facts were undisputed; but, even as to these, in some instances, different inferences might be drawn. The grade crossing over which plaintiffs undertook to pass was 23½ feet wide, and Washington Street, at the crossing, 43 feet wide. As plaintiffs in their southbound vehicle approached the railroad track from the north, there were two converg-

ing switch or spur tracks, one of which goes back across the main line track west of the crossing. After crossing the switch tracks, the plaintiffs would reach the main line track on which the eastbound train was running. Traffic passing over the crossing has a good view, both to the east and to the west when approaching from the south, but southbound traffic, when standing at the stop sign, had the view to the right hand side, or west, obstructed by a warehouse or loading shed.

According to plaintiffs' surveyor and defendant's civil engineer, the shed on defendant's right of way north of the track and west of Washington Street, was 11 feet north of the nearest or most northern rail of the north spur track. Stopping at the stop sign going south, plaintiffs' surveyor testified that he had a view to the west for 170 feet; and plaintiffs each testified to an estimated view to the right of 150 feet. Plaintiffs testified that there was a box car parked on the spur track alongside of the south side of the loading shed, in which testimony they were corroborated by plaintiff George Baggett's brother, Heiskell Baggett. Defendant offered evidence tending to show that there was no box car on the spur track, but this presented merely an issue of fact to be decided by the jury. Defendant's fireman testified that he first saw plaintiffs' pickup truck appear when the locomotive was 120 to 150 feet west of the crossing, and on cross examination, he reduced this distance of view to 120 to 130 feet. Defendant's locomotive engineer could not see the plaintiffs because he was on the opposite side of the cab.

Plaintiffs testified that the grade crossing was "awful rough," and photographs offered in evidence by the defendant show that the space between the spur tracks and the main line track was rough. On cross examination,

defendant's adjuster testified that southbound traffic could not cross over as fast as it might desire because, "If you got in one of those holes, you might damage a tire, yes sir."

Both plaintiffs testified that they stopped at the stop sign which is about 10 feet north of the north rail at the crossing. Defendant's fireman testified that plaintiff drove by the stop sign "very slow" and one of the defendant's witnesses, Thaxton, testified that plaintiff drove by this stop sign at "Normal like" speed. With reference to the blowing of the whistle and the ringing of the bell on defendant's engine, there is considerable diversity of testimony. Plaintiffs testified that they did not hear the bell nor the whistle. The engineer testified that he put the bell into automatic ringing when he entered the corporate limits of Brownsville, and left it there until after the train had stopped.

With reference to speed of the train, which consisted of the locomotive and nine cars, plaintiff George Baggett testified that it was "coming fast" and plaintiff Ruth Baggett testified that it was "just a matter of seconds" when she and her husband first saw the train and it was traveling "awful fast, faster than 30 miles per hour," in her opinion. Defendant's conductor testified the train left Memphis 55 minutes late and arrived at Brownsville, a regular stop, 55 minutes late. The defendant's locomotive engineer testified that his speed was 15 miles per hour at the time of the collision. He said he was coasting at the time he applied the emergency brake. The fireman testified that the speed was "approximately —Oh, between 15 and 20 miles per hour" when the emergency brake went on. The conductor testified that the

train had slowed down to 15 or 20 miles per hour. From the time the emergency brakes were applied until the train came to a stop, the train had traveled 373 feet. In Ori v. St. Louis & San Francisco Ry. Co., 48 Tenn.App. 448, 348 S.W.(2d) 809, a train of 5 cars traveling at a speed of about 20 miles per hour was stopped within a distance of 65 feet. According to the testimony of defendant's locomotive engineer, the emergency stopping distance at 15 miles per hour was 352 feet, whereas, the defendant's fireman placed the normal distance at the figure 273 feet actually used by the train in this instance.

Defendant's fireman testified that when he saw that defendant's truck was coming onto the track, he shouted to the engineer, ''Shoot her,'' which was explained as being a direction to apply the emergency brakes. He also testified, however, that he could himself have applied the emergency brakes, but thought it was better to have the engineer do so.

The Brownsville Chief of Police testified that another southbound car was struck by an eastbound train at this same crossing about 25 days before the accident here involved. This evidence was admissible for the purpose of onerating the defendant with knowledge that this was a dangerous crossing for southbound traffic. Louisville & N. R. R. Co. v. Evins, 13 Tenn.App. 57; John Gerber Co. v. Smith, 150 Tenn. 255, 263 S.W. 974.

At the time of the accident, it was raining and plaintiffs had their windows closed with their heater running. According to the defendant's locomotive engineer, the emergency brake was first applied one rail's length (39 feet) west of the crossing, but according to the fireman, the emergency brake was first applied sixty

(60) feet west of the crossing. Counsel for plaintiffs contend that since defendant saw fit to put on its proof after its motion for a directed verdict had been overruled at the end of plaintiffs' proof, plaintiffs are entitled to the benefit of any testimony favorable to them by any of defendant's witnesses; and that in determining whether there was any material evidence to submit to the jury, the court should have considered not only testimony offered by plaintiffs themselves, but also testimony of defendant's witnesses, so far as same might be considered favorable to plaintiff. For this they cite: Nashville Ry. & Light Co., v. Henderson, 118 Tenn. 284, 99 S.W. 700; John Gerber Co. v. Smith, 150 Tenn. 255, 263 S.W. 974; and Gilreath's Caruthers' History of a Lawsuit, 7th Ed., sec. 361, page 398. This contention of counsel for plaintiffs is, in our opinion, sound. It follows, therefore, that in ruling on defendant's motion at the end of all the proof, the trial judge should have considered all of the proof, including that offered by defendant, and should have given to plaintiffs the benefit of any inferences favorable to them which might have been drawn from all the testimony, including that of defendant's witnesses. Tried by this test, we think the learned trial judge erred when, on motion for new trial he set aside the jury's verdict and undertook to correct what he considered to have been an error in overruling defendant's motion for directed verdict. We think he ruled correctly when he overruled defendant's motion for a directed verdict and submitted the case to the jury and incorrectly when, on motion for new trial, he granted that motion. Since he did not approve the jury's verdict, however, we cannot reinstate it.

As stated above, Chapter 130, Public Acts of 1959 has, in our opinion, reduced the count in plaintiffs' declaration charging violation of the Statutory Precautions Act, secs. 65-1208 and 65-1209, T.C.A., into the equivalent of an additional common law count. This court held in Ori v. St. Louis & San Francisco Ry. Co., 48 Tenn.App. 448, 348 S.W.(2d) 809, on authority of Gaines v. Tennessee Cent. R. Co., 175 Tenn. 389, 135 S.W. (2d) 441, that subsection 4 of section 65-1208, T.C.A., which requires railroad companies to sound the alarm whistle, put the brakes down, and do everything possible to stop the train and prevent an accident, when any person, animal, or other obstruction appears on the road, is not applicable to a crossing collision, in a cause of action for violating the Statutory Precautions Act, where a moving automobile such as is involved in the instant case, is approaching the railroad track. We think that decision is applicable to the facts in the instant case. There remains, however, the common law duty of the defendant to take all reasonable precautions, under the circumstances, to avoid an accident. In any event, it has been repeatedly held that the provisions of the Statutory Precautions Act are merely declaratory of the common law duties of railroad companies. Chesapeake & N. R.R. v. Crews, 118 Tenn. 52, 99 S.W. 368; Whittaker v. L. & N. R. Co., 132 Tenn. 576, 179 S.W. 140; Katzenberger v. Lawo, 90 Tenn. 235, 16 S.W. 611, 13 L.R.A. 185; Tennessee Cent. Ry. Co. v. Dial, 16 Tenn.App. 646, 65 S.W.(2d) 610; Ori v. St. Louis & San Francisco Ry. Co., 48 Tenn. App. 448, 348 S.W.(2d) 809. In that view of the situation, we think the jury might properly have taken into consideration the discrepancies between the testimony of defendant's locomotive engineer and defendant's fire-

man, and might properly have decided that the fireman, rather than the engineer, should have immediately applied the emergency brakes, which, in turn, might have prevented the accident. The proof shows that plaintiffs' automobile was nearly across the main line track when it was hit. Also, we think the jury might have properly inferred from the distance covered by the train before it came to a stop, after application of the emergency brakes, that it must have been traveling at a rate of speed in excess of 30 miles per hour, or at an excessive rate of speed under the circumstances. This Court, Middle Section, in Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn.App. 618, 636-637, on authority of Elmore v. Thompson, 14 Tenn.App. 78, held, with reference to an automobile accident that,

"Direct testimony is not essential to warrant a finding of excessive speed. Evidence as to the force of the impact of a collision, or as to the distance which an automobile causing an injury overshot the point of the accident before being brought to a standstill, is of significance and may be, by itself, or in connection with other circumstances, of sufficient force to warrant a jury in finding negligence as to speed, and in drawing an inference that the machine was traveling at a rate of speed such as to endanger the life or limb of persons upon the highway."

We think the jury in the instant case might similarly have applied the facts of the case in determining the speed of defendant's train, and might properly have found as a fact that that speed was in excess of 30 miles per hour, or excessive and improper under the existing circumstances.

188

■ Also, the jury's verdict in the instant case might, in our opinion, have been founded properly upon a finding of fact that the bad condition of the railroad crossing, which the railroad company was obligated, under the provisions of section 65-1101, T.C.A., to keep in good repair, caused the plaintiffs to fail to clear defendant's railroad track in time to avoid the collision, whereas, if the crossing had been in good repair, the plaintiffs' truck might have been clear of the south side of the railroad track in time to have avoided the accident. The fact that the railroad crossing here involved is located inside the corporate limits of the city of Brownsville, does not release the defendant from its duty to keep that crossing in proper repair. Southern Ry. Co. v. Maples, 201 Tenn. 85, 296 S.W.(2d) 870, 873.

■ Counsel for defendant contend that all of plaintiff's testimony is purely negative in character and that, in the face of positive testimony to the contrary, the trial judge correctly ignored same when he granted the motion for a directed verdict. This may be true, with reference to the ringing of the bell or sounding the whistle on the locomotive, but not with reference to the speed of the train or the bad condition of the crossing. Even with reference to the ringing of the bell and sounding of the whistle, there was considerable discrepancy between the testimony of defendant's witnesses on that subject; and because of that, the jury may have disbelieved some or all of them.

■ It is our opinion that the learned trial judge ruled correctly at the trial when he overruled defendant's motion for a directed verdict, and that he committed reversible error when, on granting defendant's motion for new trial, he reversed himself and granted that motion.

Counsel for plaintiffs insist that, if we reverse the decision of the lower court in this case, plaintiffs are entitled to have the jury verdicts reinstated. We cannot, however, reinstate these verdicts, because they have not been approved by the trial judge. Smith v. Tucker, 203 Tenn. 305, 311 S.W.(2d) 807; Hurt v. Yazoo & M. V. Ry. Co., 140 Tenn. 623, 205 S.W. 437; Hamburger v. Illinois Cent. R. Co., 138 Tenn. 123, 196 S.W. 144; Queener v. Walker, 189 Tenn. 268, 225 S.W.(2d) 57. It therefore follows, that even though plaintiffs are entitled to a reversal, we can only remand these causes to the Circuit Court of Haywood County for a new trial.

For the reasons stated, appellants' assignments of error will be sustained and this cause will be remanded to the Circuit Court of Haywood County for a new trial in conformity with this opinion.

The costs of the appeal are adjudged against the defendant, Louisville & Nashville Railroad Co., Inc. The costs of the lower court will await the final outcome of the cause.

Avery, (P. J. W. S.), and Bejach, J., concur.