UNION RAILWAY COMPANY, Plaintiff in Error, v. VIRGINIA L. JINKS and VAUGHN D. JINKS, Defendants in Error.—402 S.W.(2d) 495.

Western Section at Jackson. December 10, 1965.

Certiorari Denied by Supreme Court April 18, 1966.

Cooper Turner, Jr., Memphis, Canada, Russell & Turner, Memphis, of counsel, for plaintiff in error.

J. Harold Nichols and Clifford D. Pierce, Jr., Memphis, Pierce, Rice, Bratcher & Pierce, Memphis, of counsel, for defendant in error.

BEJACH, J. In this cause, the Union Railway Company, which was defendant in the lower court, appeals in error from verdicts and judgments against it recovered by Virginia L. Jinks and Vaughn D. Jinks, her husband. The verdict and judgment in favor of Virginia L. Jinks was for $4,000, and that in favor of Vaughn D. Jinks, was for $2,500. No complaint was made as to the amount of the verdicts if the Union Railway Company is to be held liable; and reliance is placed alone on its single assignment of error, which is that defendant's motion for a directed verdict, made at the conclusion of all the proof, should have been sustained and plaintiffs' suits dismissed. In this opinion, the parties will be styled, as in the lower court, plaintiffs and defendant, or referred to by their respective names, plaintiffs being called Mr. and Mrs. Jinks and the defendant, the Union Railway Company.

The accident out of which this litigation arose occurred in Memphis, Tennessee on November 20, 1962, at a little after 4:00 P.M. on north Springdale Street where that street crosses the tracks of the Union Railway Company. Mrs. Jinks, with two children in the car with her, was driving her husband's Ford automobile en route to pick him up at his place of employment, Binswinger Glass Company. She had turned south from Chelsea Avenue onto Springdale Street and had followed a blue automobile which crossed the Railway Company's tracks just in time to escape being struck by defendant's train, but Mrs. Jinks drove her car into the side of the engine which was crossing the street in an eastwardly direction. She was severely injured and the automobile was badly damaged. Mrs. Jinks had passed this crossing twice before on the day of the accident, in the morning while

taking her husband to work, and shortly thereafter on returning home. According to her testimony, he was driving on the way to work that morning, and consequently, the first time she had driven to the crossing from the north side of same was when the accident occurred. Springdale Street is about eighty feet wide, with two driving lanes in each direction, in addition to a parking lane on each side. Mrs. Jinks was driving in the lane next to the center of the street, and evidently the blue automobile which she had been following was in the same lane. According to her testimony, she remembered very little after she turned into Springdale Street, except that she was following a blue automobile and that she heard no warning signal as she approached the railroad. There is other proof in the record that the engineer on defendant's engine did not sound the whistle or ring the bell, so the jury was warranted in finding, as it evidently did, that defendant violated provisions of the Statutory Precautions Act which require the blowing of the whistle and the ringing of the bell. It follows, therefore, that if defendant's assignment of error is to be sustained, it must be on the ground that Mrs. Jinks was, as a matter of law, guilty of proximate contributory negligence which bars the right of recovery in this case. Since the enactment of Chapter 130, Public Acts of 1959 (secs. 65-1208 and 65-1209, T.C.A.), violations of the Statutory Precautions Act constitute merely negligence per se, and the defense of contributory negligence is available just as in other cases. Baggett v. Louisville & N. R. R. Co. (1963), 51 Tenn.App. 175, 365 S.W.(2d) 902.

According to the undisputed evidence in this case, the crossing is protected by a crossed arms warning sign on the west side of the street and north side of the crossing,

which could or should have been readily visible to any person driving southwardly on Springdale Street. Mrs. Jinks was driving at a rate of about 30 to 35 miles per hour, and the defendant's train was approaching at a speed of about 12 to 15 miles per hour. Although Mrs. Jinks testified about some obstruction to her view caused by a hedge and a house on the west side of the street, north of the railroad company's tracks, she stated that a photograph introduced as Exhibit 2 to her testimony presents an accurate picture of the scene of the accident, including the hedge and the house. According to other testimony explaining that photograph, which is undisputed, the house sits 53 feet and 6 inches north of the track, and the eastern edge of its front porch is 19 feet and 6 inches west of the curb line of the street, so that anyone driving a car southwardly, in the middle lane, as Mrs. Jinks stated she was doing, can see a point on the track 44 feet west of the curb line, or nearly 75 feet west of the point of collision when 150 feet north of the point of collision. A point on the track can be seen 71 feet from the west curb line, or approximately 100 feet west of the point of collision when a car is 100 feet north of the point of collision, and one can see a point on the track 156 feet west of the curb line, or 180 feet west of the point of collision when one is 70 feet north of the point of collision. Also, according to the testimony of Mr. Billy E. Willis, a witness for plaintiffs, he was driving southwardly in the lane next to the parking lane at the time of the accident, approaching the railroad at a speed of 25 to 30 miles per hour. He saw the engine and car just in time to bring his car to a stop 30 feet north of the railroad track. He also said that he saw another car pass him on his left and cross the railroad track just ahead of the train, and that after this car passed him and

crossed safely, Mrs. Jinks also passed him on the left, but did not get across safely. In addition, according to the testimony of Mr. Willis, when he first saw the train, his automobile and the engine were about the same distance from the crossing, and he, himself, was just past or about even with the line of shrubbery on the west side of Springdale Street. From that point on, he said there was nothing to obstruct his vision for an unlimited distance down the tracks.

■ On authority of Louisville & N. R. R. Co. v. Anderson (1928), 159 Tenn. 55, 15 S.W.(2d) 753; Tenn. Cent. R. R. Co. v. Ledbetter (1928), 159 Tenn. 404, 19 S.W.(2d) 258; Snyder v. Mo. Pac. R. R. Co. (1945), 183 Tenn. 471, 192 S.W.(2d) 1008; and many other cases, including those therein cited, we feel constrained to hold that defendant's assignment of error must be sustained.

In Louisville & N. R. R. Co. v. Anderson, the personal representative of a guest passenger in an automobile, who was killed by a train at a railroad crossing, recovered a verdict and judgment which was affirmed by the Court of Appeals, but the Supreme Court reversed and dismissed the case, holding that a directed verdict should have been granted in favor of the railroad company. From the Supreme Court's opinion, written by Mr. Justice Swiggart, we quote as follows:

"The undisputed evidence shows that Anderson, on the rear seat of the sedan, could have seen the approaching train in time to warn the driver and avoid the accident. Either he did see the train, and failed to utter any warning, or else he did not look up the track as he was being carried to the crossing, and thus failed to discover what would have been obvious if he

had looked. In either event, he was guilty of a failure to take reasonable precautions for his own safety, which failure undoubtedly contributed proximately to the accident.

The Court of Appeals was of the opinion that the difference between the situation of the driver and that of the guest on the rear seat was such as to support and justify the action of the trial judge in overruling the motion for a directed verdict. That there is a difference in the situation of the driver and guest on the rear seat in many cases of accident is apparent, but in the case before us no such difference exists as to convict the one of negligence and relieve the other. Their view of the track was the same for a distance of at least 40 feet from the crossing, and the margin of time and space between the collision and safety is shown to have been so slight that a discovery of the peril up to the very time the automobile entered the crossing would undoubtedly have prevented the accident." Louisville & N. R. R. Co. v. Anderson (1928), 159 Tenn. 66, 15 S.W.(2d) 756.

Emphasizing the circumstance that the Supreme Court rested its judgment on the contributory negligence of the passenger, rather than on absence of negligence on the part of the railroad company, we quote further from the Supreme Court's opinion, as follows:

"Assuming, without deciding, that the Court of Appeals correctly found in the record evidence of negligence on the part of the defendants, in the condition of the crossing and the speed at which the train approached the crossing, we see no escape from the conclusion that Anderson was also guilty of negligence

in failing to notice the obvious danger and warn the driver, and that the accident was the result of the concurring negligence of the defendants, the driver of the automobile and Anderson, and that the motion for a directed verdict should have been sustained." Louisville & N. R. R. Co. v. Anderson (1928), 159 Tenn. 68, 15 S.W.(2d) 757.

In Tennessee Central Railway v. Ledbetter (1928), 159 Tenn. 404, 19 S.W.(2d) 258, the administratrix of a deceased, who was killed when he drove his automobile onto the tracks of the defendant railroad company, recovered a judgment in the Circuit Court which was reversed by the Court of Appeals. The Supreme Court affirmed the Court of Appeals. From the Supreme Court's opinion, written by Mr. Justice McKinney, we quote as follows:

"The deceased was guilty of gross negligence in going upon said tracks without bringing his car to a stop and looking and listening. Tennessee Cent. Ry. Co. v. Page, 153 Tenn. 84, 282 S.W. 376.

Conceding that the fireman was quilty of negligence in not signaling the engineer to stop when he first discovered the automobile approaching the main track, it is apparent that the negligence of deceased continued to operate concurrently to the moment of the accident, in which event no recovery can be had. Grigsby & Co. v. Bratton, 128 Tenn. 597, 163 S.W. 804; Todd v. [Cincinnati, N. O. & T. P.] Railroad, 135 Tenn. 104, 185 S.W. 62, L.R.A.1916E, 555; Johnson v. Warwick, 148 Tenn. 205, 254 S.W. 553." Tenn. Cent. Ry. v. Ledbetter (1928), 159 Tenn. 408, 19 S.W.(2d) 259.

The case of Snyder et al. v. Missouri Pacific R. R. Co. et al. (1945), 183 Tenn. 471, 192 S.W.(2d) 1008, involved consolidated suits for the death of two men, Huffman and Roth, both of whom were killed in a railroad crossing collision when the automobile of Roth, driven by Huffman, in which both of them were riding, was driven onto the railroad tracks and struck by a train. The case was tried under provisions of an Arkansas comparative negligence statute, which provided, ''In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence.'' The trial judge had sustained motions for directed verdicts in both cases. The Court of Appeals affirmed in the Huffman case, but reversed in the Roth case. The Supreme Court, however, granted certiorari and held that the trial judge had properly granted directed verdicts in both cases. From the Supreme Court's opinion, written by Mr. Chief Justice Green, we quote as follows:

''We do not think reasonable men should differ as to the degree of negligence herein of Huffman, the driver of the car. It seems clear to us that his negligence equaled or was greater than the negligence of the employees of the railroad company and that his representatives are entitled to no recovery.

In Arkansas, as elsewhere, a railroad track is an admonition of danger and it is the duty of persons crossing the track to look and listen before making this effort. Such persons are bound by what they could have discovered had they looked or listened. If the duty to look and listen cannot be adequately performed without stopping, it is the duty of the traveler to stop. Apart from his knowledge of this crossing this driver had warning of the railroad track ahead of him by the flasher signal when he was yet over 150 feet distant. If his view to his right and left was obscured at that time, it became his duty to approach the track with his car under control. Had he done so, when he reached the point 55 feet from the track, he would have had a clear view of the approaching train from the north.

\*  \*  \*  \*  \*  \*

We agree with the court of appeals that the negligence of the driver of the car equaled or exceeded that of the employees of the railroad company and requires the dismissal of his representatives' (the Huffman) suit. We do not follow the court of appeals, however, in its ruling that the negligence of Huffman is not to be imputed to Roth and does not bar recovery by the representatives of Roth as well as by the representatives of Huffman.

It is to be remembered that this was Roth's car. Huffman was his employee. Roth was riding in his own car and regardless of whether Huffman's employment included car driving regularly, at the time of the accident he was obviously driving with Roth's consent. Roth had dominion over the operation of his automobile.'' Snyder et al. v. Mo. Pac. R. Co. et al. (1945), 183 Tenn. 479-480, 192 S.W.(2d) 1011-1012.

Counsel for plaintiffs contend that the Snyder case should not be held to be controlling in the instant case, because the Snyder case was tried under the Arkansas comparative negligence statute. In our opinion, this contention is wholly without merit, because, if, as was held in the Snyder case, the negligence of the driver of the automobile equalled or was greater than the negligence of the railroad company's agents, and that reasonable men should not differ in this conclusion, then, *a fortiori,* in the instant case where proximate contributory negligence of any degree on the part of the driver of the automobile must be held to bar the right of recovery, reasonable men should not differ in concluding that the negligence of Mrs. Jinks constituted at least a part of the proximate cause of the collision and its resulting injuries.

For the reasons above stated, defendant's assignment of error will be sustained, the judgment of the Circuit Court will be reversed, and plaintiffs' suit will be dismissed.

The costs of the cause will be adjudged against the plaintiffs, Virginia L. Jinks and Vaughn D. Jinks, and their surety on the cost bond filed in the Circuit Court.

Avery, P.J. (W.S.), and Carney, J., concur.