Mae Bell **MAXWELL**

v.

**WESTERN–ATLANTIC RAILROAD COMPANY.**

**Herbert E. FRYAR, Individually and d/b/a Herbert E. Fryar Hauling**

v.

**WESTERN–ATLANTIC RAILROAD COMPANY.**

**Civ. A. Nos. 4757, 4892.**

United States District Court
E. D. Tennessee, S. D.

Dec. 26, 1967.

---

Berke & Berke, Chattanooga, Tenn., for plaintiff Maxwell.

Harold E. Brown and Ray Siener, Chattanooga, Tenn., for plaintiff Fryar.

Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for defendant.

## MEMORANDUM

FRANK W. WILSON, District Judge.

These two lawsuits, which were consolidated for trial, involve an action for wrongful death and an action for property damage respectively. They arose out of a railroad crossing accident. The cases were tried before a jury and the jury returned a verdict for the plaintiff in the wrongful death action in the sum of $60,000 and returned a verdict for the plaintiff in the property damage action in the sum of $1500. The cases are now before the Court upon the defendant's motion for judgment notwithstanding the verdict or in the alternate for a new trial. The defendant's motions are identical in each case.

Turning the attention of the Court first to the defendant's motion for judgment notwithstanding the verdict, it is the contention of the defendant that under the evidence the plaintiffs' decedent was guilty of proximate contributory negligence as a matter of law and any

recovery by the plaintiffs would accordingly be barred.

■ This being a diversity action, the accident out of which the lawsuits arose having occurred at a railroad crossing in Hamilton County, Tennessee, the Court must look to the law of Tennessee in resolving all issues of substantive law. In considering a motion based upon alleged insufficiency of the evidence to support a verdict, the law in Tennessee, as in other jurisdictions, is to the effect that the Court must consider the evidence in the light most favorable to the plaintiffs. As stated by the Court in the case of Wallace v. Louisville & Nashville Railroad Co., (C.A.6, 1964) 332 F.2d 97:

> "In considering a motion for a directed verdict, the rule in Tennessee required the court
>
> " '* * * to look to all the evidence, to take as true the evidence for the plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for the plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion for a directed verdict must be denied.'
>
> "Poe v. Atlantic Coast Line Railroad Co., 205 Tenn. 276, 284, 326 S.W.2d 461, 464; Baggett v. Louisville & Nashville Railroad Co., [51 Tenn.App. 175] 365 S.W.2d 902, 904–905."

In reviewing the evidence in this case it should first be noted that the following facts were stipulated into the record by the parties as a part of the pretrial order:

> "A collision occurred upon November 29, 1965, at approximately 5:00 P.M. at a railroad grade crossing designated as the 'Old Shallowford Road at Jersey Pike'. The collision was between a freight train owned and operated by the defendant, Western-Atlantic Railroad Company, and a truck owned by the plaintiff, Herbert E. Fryar, and being operated at the time by Lee E. Maxwell in the course and scope of his employment for Herbert E. Fryar. The plaintiff, Mae Bell Maxwell, is the surviving widow of Lee E. Maxwell. As Lee E. Maxwell operated his truck in a westerly direction upon Old Shallowford Road and as the defendant operated its train in a backward movement upon the tracks, a collision occurred. As a result of the collision Lee E. Maxwell was killed instantly."

It was undisputed in the trial that the accident occurred during daylight hours on a clear day. From testimony and photographs introduced at the trial it was also undisputed that the railroad track where the accident occurred consisted of one set of tracks, running generally in a northerly and southerly direction. The Vulcan Rock Products Plant is located on the west side of these tracks and access to the plant from the east was by way of Old Shallowford Road at the time of the accident, which road ran in an easterly and westerly direction at the point of the crossing. A crossarm sign warning of a railroad crossing, as well as a stop sign, was posted on Old Shallowford Road at the crossing and was clearly visible for traffic travelling in a westerly direction on the road, the direction in which Lee E. Maxwell was driving at the time of the accident. The roadway consisted of a two-lane blacktop road, some 25 feet in width, and was approximately level with the railroad track for some distance on each side of the track, although there was a slight rise in the road at the point of the crossing. Visibility along the railroad track was good from the point of the crossing to a highway overpass some 1,000 or more feet to the north. Lee Maxwell, an experienced truck driver, was employed at the time of the accident as a driver for the plaintiff, Herbert E. Fryar, hauling crushed rock from the Vulcan Rock Products Plant. In the course of his employment he had crossed this particular crossing many

times. The accident occurred as he was returning with his truck empty at the end of the day in preparation for quitting work. The train involved in the accident consisted of eight loaded cars, an engine and a caboose. The engine was located near the middle of the train, with five cars and a caboose in front of the engine and three cars behind the engine. The train was moving in a southerly direction upon the track as it approached the Old Shallowford Road crossing and the caboose was the lead car in this movement.

Seven witnesses testified on behalf of the plaintiffs. The testimony of three of these, Mrs. Painter, the former wife of the decedent, Mrs. Maxwell, the decedent's wife at the time of his death, and Larry McClure, an accountant, did not in any way relate to the issue of liability. Their testimony accordingly need not be reviewed in connection with the motion for judgment n. o. v. Of the remaining four witnesses introduced on behalf of the plaintiffs, none actually witnessed the accident, but George Sellars witnessed events immediately prior to the accident, Jerry Pendergraff witnessed events both prior and subsequent to the accident, and Eugene Miller, a highway patrolman, and Herbert E. Fryar, the employer of Lee Maxwell, the decedent, and owner of the truck involved in the accident, each came to the scene following the accident.

George Sellars, a truck driver who also worked for Mr. Fryar, testified that on the afternoon of the accident as he left the Vulcan Plant with a load of rock and crossed the railway tracks, he noticed the train some unspecified distance up the track, but seeing the caboose on the near end of the train thought that the train was moving away from the crossing. He did not at any time hear any train bell nor whistle, nor did he see anyone on the caboose. Just after passing the crossing, and within some 50 feet of the crossing, he met Lee Maxwell returning to the plant with a truck. They each stopped and conversed briefly and Maxwell stated that he had already hauled his last load for the day. Sellars then drove on and was not aware of the accident until he returned to the scene some 30 to 45 minutes later. He had heard a noise as he had driven some 200 or 300 yards down the road after leaving Maxwell, but thought at the time that it was only the noise of Maxwell's empty truck as he crossed the railway tracks. When Sellars returned he found that Maxwell's truck had been knocked some 100 to 125 feet down the track from the crossing. At that time neither the train nor the truck had been moved but were still where they had come to rest, with Maxwell's body still pinned in the wreckage. The caboose had derailed to the west side of the track and the decedent's truck was pinned in front of the first railway car, a car loaded with lumber. The witness identified pictures of the scene and testified that from the position where he had stopped to talk to Maxwell there was visibility up the railway track as far as the overpass.

Eugene Miller, a highway patrolman who came to the scene after the accident, described the position of the train and the truck following the accident and stated that none of the train crew had represented to him that a crew member was on the rear of the caboose at the time of the accident.

Jerry Pendergraff testified that he was travelling northwest on New Shallowford Road in his automobile just prior to the accident and had noticed the train. Seeing the caboose, his first impression was that the train was moving away from the Old Shallowford Road crossing, but then he observed that the train was backing. He did not see anyone on the caboose, nor did he hear any train whistle blow. He also noticed the two dump trucks stopped on Old Shallowford Road. When he last observed the train prior to the accident, it was about 125 feet north of the crossing. The first that he was aware of any accident was when he heard the noise from the accident and looked back to see that the train had struck one of the dump trucks. He went back to the scene, where he ob-

served that the caboose had been derailed, that the truck had been knocked about 100 feet down the track and that the driver's body had been pinned in the wreckage.

Herbert E. Pryar testified that he went to the scene of the accident, arriving there before the wreckage had been removed. He described the scene as reflected in photographs introduced at the trial and as summarized above.

Eleven witnesses testified on behalf of the defendant. The testimony of six of these was not related to the circumstances of the accident. The five witnesses whose testimony would be relevant to the motion for judgment n. o. v. would be the four members of the train crew and the truck superintendent of Vulcan Rock Products.

J. K. Stephens, the train flagman, testified that he was riding upon the rear platform of the caboose as the train backed toward the Old Shallowford Road crossing at eight to ten miles per hour. From his position on the caboose he had control of the brakes upon the train and control of the rear whistle, which he blew continually as the train approached the crossing. He first noticed the truck as it passed the train going in the same direction at a point where Old Shallowford Road runs approximately parallel to the railway tracks. He saw the truck turn to cross the tracks and slowed down as though to stop. By this time the truck was within ten or fifteen feet of the crossing and the caboose was within 25 or 30 feet of the crossing. The driver of the truck appeared to look toward the train, but then continued to pull onto the crossing. Mr. Stephens thereupon put the train brakes in full emergency and attempted to get inside the caboose before they hit, but was unable to do so. The caboose was derailed and the witness himself received minor injuries. The train went about 120 or 140 feet after the brakes were applied, striking the truck and carrying it in front of the train.

Joe C. Steele, the train brakeman, testified that he was riding in the engine upon the left side, or the side from which the Maxwell truck approached the crossing. As they approached the crossing the train was travelling eight or ten miles per hour. He first noticed the truck as it was running parallel with the train. As the truck turned to make the crossing, it slowed as though to stop, but then came on. Steele thereupon called to the engineer to throw on the emergency brakes. The witness estimated that the caboose was within 25 or 30 feet of the crossing when Maxwell started across. He testified that the engine bell was ringing all of the time as the train approached the crossing and that the engineer had been blowing the whistle and was in the process of giving the last of a series of five whistle blasts when the accident occurred. He testified that when the train came to rest, the caboose and two cars had cleared the crossing, with the third car being in the crossing.

George Adams, the engineer, testified that he was upon the right or west side of the engine as they approached the Old Shallowford Road crossing and that the train was moving about eight to ten miles per hour. He blew the whistle five times as they approached the crossing and was in the process of blowing the whistle the fifth time as the accident occurred. He did not see the truck, as it approached from the opposite side of the train, and the first notice he had was when the brakeman yelled to "shoot the brakes!", which he did. The train stopped within 100 to 150 feet.

Henry Carden, the conductor, testified that he was inside the caboose making out reports as the train approached the crossing and that Stephens, the flagman, was on the rear platform of the caboose. He heard both the engine whistle and the whistle on the caboose blowing as they approached the crossing. The first that he knew of the accident was when he heard Stephens put on the air brakes and try to open the caboose door. Carden got up to go to the door but was knocked down by the impact before he

could get there. The caboose was derailed in the accident.

Kile Baker Trent, the truck superintendent at Vulcan Rock Products, was at the plant at the time of the accident but did not actually see the impact as a building was between him and the crossing. He did see the train as it approached the crossing, heard it blow its whistle three or four times and saw someone riding on the rear of the caboose, but the train passed out of his sight behind the building about 100 feet before the crossing. He heard the impact and went to the scene after the accident. He testified that the crossing was in good state of repair at the time. Otho Eugene Chambers, the field office manager for Vulcan Rock Products, also testified that the crossing was in good condition on the date of the accident.

The issue presented to the Court upon the motion for judgment n. o. v. is whether under the above state of the evidence and the Tennessee law a jury issue existed with respect to whether the plaintiffs' decedent was guilty of proximate contributory negligence. No issue is presented upon the motion for judgment n. o. v. with respect to negligence on the part of the defendant and the validity of the verdict upon this issue may be assumed for the purpose of the motion.

Turning the attention of the Court to the relevant Tennessee law, it should initially be noted that the question of the plaintiffs' decedent's proximate contributory negligence is vital to the validity of the verdict in this case. While prior to 1959 contributory negligence was not a complete defense where the railroad's negligence was predicated upon the Railroad Precautions Act but rather operated only to mitigate damages in such cases, the 1959 amendment to the Railroad Precautions Act had the effect of repealing the provisions of the earlier law which had eliminated contributory negligence as a bar to recovery. TCA Section 65-1209. See also Baggett v. Louisville & Nashville Railroad Co., 51 Tenn.App. 175, 365 S.W.2d 902 (1962); 12 Vanderbilt Law Review 1350, 1361 (1959); 28 Tennessee Law Review 437 (1961). Thus, contributory negligence in a railroad crossing accident is now a complete bar to any recovery by the plaintiff as it is in other negligence actions in Tennessee, even though the plaintiff relies upon the Railroad Precautions Act for establishing negligence upon the part of the defendant.

Although Tennessee does not follow the Pennsylvania rule and hold a motorist guilty of contributory negligence as a matter of law in every instance where the motorist fails to stop, as well as look and listen, at a railroad crossing, Hurt v. Yazoo & M. V. R. Co., 140 Tenn. 623, 205 S.W. 437 (1918), under Tennessee law a railroad crossing is a warning of danger and a motorist is required to exercise ordinary care for his own safety, including the precautions of stopping, looking and listening where ordinary care would require as much. Hurt v. Yazoo & M. V. R. Co., *supra;* Tennessee Central Railway v. Ledbetter, 159 Tenn. 404, 19 S.W.2d 258 (1928); Snyder v. Missouri Pacific Railway Co., 183 Tenn. 471, 192 S.W.2d 1008 (1945); Wallace v. Louisville & Nashville Railroad Co., 332 F.2d 97 (C. A.6, 1964). While referring specifically to Arkansas law, the Tennessee Supreme Court in the case of Snyder v. Missouri Pacific Railway Co., *supra,* stated the general rule to be as follows:

"In Arkansas, as elsewhere, a railroad track is an admonition of danger and it is the duty of persons crossing the track to look and listen before making this effort. Such persons are bound by what they could have discovered had they looked or listened. If the duty to look and listen cannot be adequately performed without stopping, it is the duty of the traveler to stop."

While the issue of contributory negligence in railroad crossing accidents is generally an issue for the jury to decide, the Tennessee courts have nevertheless held in cases closely analogous to the principle case that the driver was guilty

of proximate contributory negligence and therefore barred from recovery as a matter of law. Louisville & N Railroad Co. v. Anderson, 159 Tenn. 55, 15 S.W. 2d 753 (1928); Tennessee Central Railway v. Ledbetter, 159 Tenn. 404, 19 S.W.2d 258 (1928); Snyder v. Missouri Pacific Railway Co., 183 Tenn. 471, 192 S.W.2d 1008 (1945); Union Railway Co. v. Jinks (1965) 55 Tenn.App. 491, 402 S.W.2d 495. See also Dean v. Southern Railway Co., 327 F.2d 757 (C.A.6, 1964).

In the case of Louisville & N Railroad Co. v. Anderson, 159 Tenn. 55, 15 S.W. 2d 753 (1928), the relevant facts are adequately set forth in the following quotation from the opinion, wherein the Court held the plaintiff, a passenger in an automobile involved in a railroad crossing accident, was barred from recovery by reason of proximate contributory negligence:

"The undisputed evidence shows that Anderson, on the rear seat of the sedan, could have seen the approaching train in time to warn the driver and avoid the accident. Either he did see the train, and failed to utter any warning, or else he did not look up the track as he was being carried on the crossing, and thus failed to discover what would have been obvious if he had looked. In either event, he was guilty of a failure to take reasonable precautions for his own safety, which failure undoubtedly contributed proximately to the accident.

"The Court of Appeals was of the opinion that the difference between the situation of the driver and that of the guest on the rear seat was such as to support and justify the action of the trial judge in overruling the motion for a directed verdict. That there is a difference in the situation of the driver and guest on the rear seat in many cases of accident is apparent, but in the case before us no such difference exists as to convict the one of negligence and relieve the other. Their view of the track was the same for a distance of at least 40 feet from the crossing, and the mar-

gin of time and space between the collision and safety is shown to have been so slight that a discovery of the peril up to the very time the automobile entered the crossing would undoubtedly have prevented the accident."

In the case of Tennessee Central Railway v. Ledbetter, 159 Tenn. 404, 19 S.W.2d 258 (1928), the plaintiff's decedent, being familiar with the railroad crossing, had driven upon the crossing during daylight hours without having stopped. Two engines stopped on sidings partially blocked the view of the engine approaching on the mainline. Nevertheless, in holding the plaintiff to be barred from recovery as a matter of law, the Court stated:

"The deceased was guilty of gross negligence in going upon said tracks without bringing his car to a stop and looking and listening.

\*　\*　\*　\*　\*　\*

"Conceding that the fireman was guilty of negligence in not signaling the engineer to stop when he first discovered the automobile approaching the main track, it is apparent that the negligence of deceased continued to operate concurrently to the moment of the accident, in which event no recovery can be had. Grigsby & Co. v. Bratton, 128 Tenn. 597, 163 S.W. 804; Todd v. [Cincinnati, N. O. & T. P.] Railroad, 135 Tenn. [92] 104, 185 S. W. 62, L.R.A.1916E, 555; Johnson v. Warwick, 148 Tenn. 205, 254 S.W. 553."

Although the case of Snyder v. Missouri Pacific Railway Co., 183 Tenn. 471, 192 S.W.2d 1008 (1954) arose under Arkansas law where the comparative negligence rule applied, in sustaining the action of the trial judge in directing a verdict for the defendant, the Court stated:

"We do not think reasonable men should differ as to the degree of negligence herein of Hoffman, the driver of the car. It seems clear to us that his negligence equalled or was greater than the negligence of the employees

of the railroad company and that his representatives are entitled to no recovery.

"In Arkansas, as elsewhere, a railroad track is an admonition of danger and it is the duty of persons crossing the track to look and listen before making this effort. Such persons are bound by what they could have discovered had they looked or listened. If the duty to look and listen cannot be adequately performed without stopping, it is the duty of the traveler to stop. Apart from his knowledge of this crossing this driver had warning of the railroad track ahead of him by the flasher signal when he was yet over 150 feet distant. If his view to his right and left was obscured at that time, it became his duty to approach the track with his car under control. Had he done so, when he reached the point 55 feet from the track, he would have had a clear view of the approaching train from the north."

In the case of Union Railway Co. v. Jinks, 55 Tenn.App. 491, 402 S.W.2d 495 (1965), the significant facts were that the plaintiff had driven her car upon a railroad crossing without stopping during daylight hours when visibility was adequate for the plaintiff to have seen the approaching train had she looked. Quoting extensively from the *Anderson, Ledbetter* and *Snyder* cases, *supra,* the Court held that "reasonable men should not differ in concluding that the negligence of Mrs. Jinks constituted at least a part of the proximate cause of the collision and its resulting injuries."

In the case of Dean v. Southern Railway Co., 327 F.2d 757 (C.A.6, 1964), the Court of Appeals set aside a jury verdict and entered a judgment for the defendant in an action arising out of a railroad crossing accident. Although the accident occurred in Virginia, the case was tried in the United States District Court for the Eastern District of Tennessee, Northeastern Division. Noting that "It is immaterial whether Virginia law or Tennessee law applies, for they are the same," the Court stated:

"Under Virginia law, whether or not Mr. Dean was familiar with the crossing, he was not relieved from the duty to use his faculties of sight and hearing. He was bound to know that other roads intersect highways as well as railroads, that people travel such intersecting roads and trains move over grade crossings. Charged with that knowledge the duty evolved upon him to exercise care commensurate with the hazards imposed upon him.

\* \* \* \* \* \*

"There can be no recovery where negligence of the deceased was either the sole cause or a proximate contribution to the cause of the collision."

■ When viewing the evidence in the present case in its most favorable light unto the plaintiff, the Court is of the opinion that, in accordance with the Tennessee law as set forth in the foregoing opinions, the plaintiffs' decedent must be found to have been guilty of proximate contributory negligence as a matter of law. Reasonable minds could reach no other conclusion but that Mr. Maxwell had ample opportunity to observe the approaching train and either failed to look, or having looked failed to see the imminent danger. He was most familiar with the crossing, having passed over it many times in the course of his employment as a truck driver hauling rock from the Vulcan Plant. The accident occurred around 5:00 p. m., during daylight hours, and at a time when visibility was good. There was no obstruction of any kind interfering with a clear view up the railroad track for a distance of at least 1,000 feet. Prior to Mr. Maxwell's having pulled onto the crossing, the approaching train had been observed by at least three of the witnesses who testified. One of the witnesses, Mr. Sellars, had himself passed over the crossing prior to the accident and had observed the train as he did so. A railroad crossing sign and a stop sign were both clearly visible approaching as did Mr. Maxwell. That the train was traveling at a slow speed is apparent both from the testimony and from the

physical evidence. That the train was in close proximity to the crossing at the time that Mr. Maxwell pulled onto the crossing in front of it is likewise apparent both from the testimony and the physical evidence. Discarding entirely the testimony of the train crew, the testimony of the plaintiffs' witness, Jerry Pendergraff, who was the only witness on behalf of the plaintiff to testify as to the position of the train in relation to the crossing prior to the accident, was that the train was within 125 feet of the crossing when he last observed it and the decedent's truck prior to the accident. At that time he had no cause to anticipate an accident. The crossing itself was a reasonably level crossing and the road was in a good state of repair. There is no evidence that the train was ever stopped within the vicinity of the crossing nor that it started from a stopped position. Although two of the witnesses testified that they gained the impression the train was moving in the opposite direction upon observing the caboose, no one disputes that the train was moving at all times. In fact, it is largely this evidence in regard to the impression created upon some witnesses by the caboose having been the lead car upon which the plaintiffs seek to avoid the application of the foregoing Tennesssee cases in regard to the issue of proximate contributory negligence. However, in view of the clear visibility, the proximity of the train to the crossing and the undisputed movement of the train at all times, the Court is of the opinion that the backward movement of the train could not be considered such a diverting influence as to modify the usual measures of caution and to avoid a finding of contributory negligence as a matter of law.

In seeking to avoid the effect of the *Jinks* and other cases cited above, the plaintiffs rely upon a number of Tennessee cases, some published and others unpublished, as well as cases from other jurisdictions. However, in each of the cases cited by the plaintiffs there appears to be significant distinguishing facts. The case of Baggett v. Louisville & Nashville Railroad Co., 51 Tenn.App. 175, 365 S.W.2d 902 (1963), which case incidentally was written by the same judge who later wrote the *Jinks* opinion, goes off on the issue of the railroad's negligence. In the case of Louisville & Nashville Railroad Co. v. Rochelle, 252 F.2d 730 (C.A.6, 1958), a crossing on a steep incline was involved and the Court, in holding contributory negligence would be a jury issue, pointed out: "The jury was entitled to consider that the roughness of the incline might absorb much of the decedent's attention." In the case of N. C. & St. L. Railway Co. v. Overton, 22 Auto.Cases 749 (Tennessee Court of Appeals, 1945), there was testimony that the train was stopped near the intersection and started from a stopped position. The Court held that this warranted submitting the issue of contributory negligence to the jury. Likewise, in the case of Southern Railway Co. v. Bolen (Unreported Opinion, Tennessee Court of Appeals, 1966), the train had started from a stopped position. The Court there stated:

"The many cases cited in defendant's brief, where a motorist was held guilty of contributory negligence, involved moving trains as well as a moving motorist. These cases offer little aid because in the present case plaintiff stopped, saw the engine parked in its customary position, and believing it unattended, proceeded on his way. Under these circumstances the question of whether plaintiff acted as an ordinary prudent person is for the jury to determine."

The case of Patapsco & Back River R. R. Co. v. Bowers, 213 Md. 78, 129 A.2d 802, involved an accident at a crossing where a flagman customarily warned of approaching trains, but no such warning was given on the date of the accident. The Court held that the absence of the warning customarily relied upon was sufficient to warrant submitting the issue of contributory negligence to the jury. The case of Caffey v. St. Louis-San Francisco Railway Co., Mo.App.,

292 S.W.2d 611, cited by the plaintiffs, also involved a train starting from a stopped position in the vicinity of the crossing. In the case of DeRossett v. Malone, 34 Tenn.App. 451, 239 S.W.2d 366 (1950), the Court recognizes the general rule that failure of a traveler to stop, look or listen at a grade crossing constitutes negligence as a matter of law, but relies upon the failure of the automatic signalling device as warranting the application of an exception to that rule. Finally, in the case of Clinchfield Railroad Co. v. Forbes, 57 Tenn. App. 174, 417 S.W.2d 210 (1966), the Court held that "Since it was dark and snow was falling, plaintiff is not chargeable as a matter of law with failure to see the train as in Union Railway Co. v. Jinks, 55 Tenn.App. 491, 402 S.W.2d 495, and other cases like it."

Having concluded that the plaintiffs' decedent was guilty of contributory negligence as a matter of law which proximately contributed to cause the accident in that it continued to the very time of the accident, the doctrine of last clear chance would have no application. Moreover, the Court is of the opinion that there was no evidence upon which a jury could find that the defendant had an opportunity to avoid the accident after the plaintiffs' decedent was or should have been discovered in a position of peril.

In order that all issues may be resolved with respect to both the motion for judgment n. o. v. and the motion for new trial, it remains appropriate for the Court to rule upon the defendant's motion for a new trial. Apart from the insufficiency of the evidence to warrant submitting the case to the jury upon the issues of contributory negligence and last clear chance, the Court is of the opinion that there was no further error in the proceedings. The motion for new trial will accordingly be overruled.

A judgment notwithstanding the verdict will enter in accordance with the foregoing opinion.